# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

GUSTAVO ADOLFO DE JE GARCIA-VELASQUEZ,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No: 8:13-cv-2854-T-30AEP
Crim. Case No: 8:08-cr-24-T-30AEP

## ORDER

THIS CAUSE comes before the Court upon the Petitioner's Motion to Vacate/Set Aside/Correct Sentence (2255) (Dkt. #1) and his Memorandum in support (Dkt. #2). Rule 4 of the Rules governing habeas cases before this Court provides in part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Upon consideration of the petition, the Court concludes that the petition must be dismissed pursuant to Rule 4 of the Rules governing § 2255 cases because it is time barred and lacks merit.

Garcia-Velasquez acknowledges that his petition is time barred, but argues that he should be entitled to equitable tolling. He makes several alternative arguments why he should be entitled to equitable tolling. None of those arguments meet the requirements of the statute or explain extraordinary circumstances sufficient to support equitable tolling.

The petition is therefore time barred and must be dismissed. The petition also lacks merit because Garcia-Velasquez misunderstands this Court's jurisdiction.

Garcia-Velasquez bases his claim for relief on the case of *United States v. Bellaizac-Hurtado*, 700 F. 3d 1245 (11th Cir. 2012):

> By this motion movant prays that his conviction be vacated and the plea declared to be <u>void</u> and voidable lacking "force and effect" of the laws because the offense for which he plead guilty is not an offense against the laws of the United States as explained by the Eleventh Circuit Court of Appeals in *Bellaizac-Hurtado*. (emphasis in original)

Petitioner's Memorandum in support (Dkt. #2), pp. 1-2.

In *Bellaizac-Hurtado*, the Eleventh Circuit held that Congress did not have the power to criminalize an act that took place solely within the territory of a foreign country. Garcia-Velasquez argues that reasoning applies to him because all of his acts were outside the United States and within the territory of one or more foreign countries. But Garcia-Velasquez misunderstands the law of jurisdiction as it applies to persons, like him, who commit acts in conjunction with others intending effects within the United States.

Garcia-Velasquez was charged with two counts of knowingly combining, conspiring, and agreeing with other persons to import cocaine into the United States. Garcia-Velasquez was extradited from Colombia and represented by private counsel Robert Abreu of Miami, Florida. Garcia-Velasquez pled guilty to Count Two in return for the dismissal of Count One.

> Count Two of the Superseding Indictment states:
>
> From an unknown date, no later than 2004, continuing thereafter up to and including the date of this Superseding Indictment, in the Middle District of Florida and elsewhere, the defendants,

2

GUSTAVO ADOLFO De Je GARCIA-VELASQUEZ,
CARLOS RODRIGO VERA, and
LOPE ANTONIO LOPEZ-ORTEGA, a/k/a 'Manuel'

did knowingly and willfully combine, conspire and agree with other persons known and unknown to the Grand Jury, to possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Sections 70503(a) and 70506(a) and (b) and Title 21, United States Code, Section 960(b)(1)(B)(ii).

Superseding Indictment (Dkt. #6), criminal case 8:08-cr-24-T-30AEP.

Sections 70503 and 70506 provide in pertinent part:

**Section 70503. Manufacture, distribution, or possession of controlled substances on vessels**

(a) **Prohibitions**. – An individual may not knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board –

(1) a vessel of the United States or a vessel subject to the jurisdiction of the United States; or

(2) any vessel if the individual is a citizen of the United States or a resident alien of the United States.

(b) **Extension beyond territorial jurisdiction.** – Subsection (a) applies even though the act is committed outside the territorial jurisdiction of the United States.

**Section 70506. Penalties**

**(a) Violations.** – A person violating section 70503 of this title shall be punished as provided in section 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 960). However, if the offense is a second or subsequent offense as provided in section 1012(b) of that Act (21 U.S.C. 962(b)), the person shall be punished as provided in section 1012 of that Act (21 U.S.C. 962).

**(b)     Attempts and conspiracies. –** A person attempting or conspiring to violate section 70503 of this title is subject to the same penalties as provided for violating section 70503.

In his written plea agreement[1] and at his guilty plea hearing, Garcia-Velasquez admitted combining and agreeing with others to import cocaine into the United States. Since the facts contained in the written plea agreement were also admitted in the guilty plea hearing, the Court will set forth those facts only from the transcript of the guilty plea hearing:

> THE COURT:     In a moment, I'm going to ask the prosecutor to advise the Court of the factual basis for each of the essential elements. Please listen carefully to these facts.
>
> Although the prosecutor is likely to read largely from your plea agreement, it is important that you listen to the facts. Because not only are they necessary for the essential elements, but the district judge may utilize these facts in fashioning an appropriate sentence in your case.
>
> Do you understand that?
>
> THE DEFENDANT:     Yes, sir.
>
> THE COURT:     Mr. Ruddy.
>
> MR. RUDDY:     Yes, Your Honor.
>
> The facts do largely track the factual basis contained on Pages 14 and 15 of the plea agreement.
>
> From at least as early as 1997 through the date of the Indictment, May 14th, 2008, the defendant agreed with his co-defendants and other co-conspirators to distribute more than five kilograms of cocaine in Colombia and utilize remote-controlled self-propelled semi-submersible vessels to transport cocaine from Colombia to Central and (sic) America and elsewhere for - - for ultimate importation into and distribution in the United States.

---

[1] Dkt. #74, case number 8:08-cr-24-T-30AEP, in the Middle District of Florida.

In September of 2006 the defendant met with a confidential informant in Panama to discuss building a remote-controlled self-propelled semi-submersible vessel for 400,0000 (sic) U. S. dollars. The meeting had been arranged by a co-defendant, Mr. Carlos Rodrigo Vera.

In the recorded meeting the defendant described the capacity of the vessel, including a cargo capacity of up to 1,800 kilograms of cocaine in addition to describing prior successful launchings of such vessels carrying cocaine in the past.

The defendant provided the informant with a diagram of the vessel and agreed to meet again after the informant has consulted with his collaborators.

A subsequent meeting occurred in July of 2007 in Panama. This meeting was also arranged by Carlos Rodrigo Vera. Due – due to the – an expired passport, defendant was unable to attend the meeting, but Lope Antonio Lopez-Ortega in his place.

During the recorded meeting with the informant, Lopez-Ortega described his role in the construction of the remote-controlled self-propelled semi-submersible, and indicated the price for construction of such a vessel had risen from (sic) $550,000 based on the current exchange rates of the Colombian peso and American dollar.

Lopez-Ortega confirmed the prior successful construction and launching of these vessels for cocaine traffickers.

During the time - - during the time before, between and after these meetings Carlos Rodrigo Vera in recorded conversations discusses knowledge of the purpose for arranging the meetings, and offered to accept delivery of up to 10 kilograms of cocaine - - of the cocaine shipment for distribution in the United States.

During the recorded meeting in Panama both Garcia-Velasquez and Lopez-Ortega describe how the vessel is designed to avoid detection by law enforcement and could be constructed and launched in remote areas to avoid law enforcement scrutiny.

Based upon his arrest in Medellin, Colombia, on August 21, 2008, thereafter the defendant gave a post-*Miranda* statement acknowledging his

involvement in the production of a remote-controlled self-propelled semi-submersible vessels in Colombia since 1997 approximately.

The defendant admitted several of the vessels successfully departed from the estuaries off the coast of Colombia loading with in excess of 1,000 kilograms of cocaine.

THE COURT: Thank you, Mr. Ruddy.

Mr. Velasquez, did you hear the facts in support of Count II? That is, the count you are pleading to in your plea agreement.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any disagreement with those facts?

THE DEFENDANT: No, sir.

THE COURT: Are these facts true?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Abreu, are you satisfied that the facts as read in open court and as outlined in the plea agreement meet the essential elements as to Count II of the Indictment?

MR. ABREU: Yes, Your Honor.

Guilty plea transcript, Dkt. #97, case number 8:08-cr-24-T-30AEP, pp. 31-35.

The law of the Eleventh Circuit is that federal courts have jurisdiction over extraterritorial acts that have intended effects within the United States. In *United States v. Ricardo*, 619 F. 2d 1124 (5th Cir. 1980)[2] the Fifth Circuit explained:

The United States and this Circuit have traditionally adhered to the objective principle of territorial jurisdictional, which attaches criminal consequences

---

[2] Cases of the Fifth Circuit prior to the formation of the Eleventh Circuit in 1981 are binding on district courts in the Eleventh Circuit. *Bonner v. City of Pritchard, Ala.*, 661 F. 2d 1206 (11th Cir. 1981).

6

> to extraterritorial acts that are intended to have effect in the sovereign territory, at least where overt acts within the territory can be proved. *United States v. Postal*, 589 F. 2d 862, 885 (5th Cir.) and cases cited therein. Implicit in these statutes is the notion that the prescribed prohibitions apply extraterritorially. *See United States v. Cadena*, 585 F. 2d 1252, 1259 (5th Cir. 1978). It seems somewhat anomalous, however, that Congress intended these statutes to apply extraterritorially, but that jurisdiction attaches only after an act occurred within the sovereign boundaries. Thus, even though the statutes were designed to prevent one type of wrong ab initio, under the traditional approach, the courts were without power to act. This dichotomy directly contravenes the purpose of the enabling legislation.
>
> As a result, it is now settled in this Circuit that when the statute itself does not require proof of an overt act, jurisdiction attaches upon a mere showing of intended territorial effects. *Postal*, 589 F. 2d at 886, n. 39. The fact that appellants intended the conspiracy to be consummated within the territorial boundaries satisfies jurisdictional requisites. Under the most recent holding in this Circuit, we conclude that, ". . . the district court had jurisdiction to try the defendants for a conspiracy aimed at violating United States law and intending effects in its territory even in the absence of proof of an overt act committed within this country." *Mann*, 615 F. 2d at 671. *See also United States v. Baker*, 609 F. 2d 134 (5th Cir. 1980).

*U. S. v. Ricardo*, 619 F. 2d at pp. 1128-1129.

Garcia-Velasquez, having admitted that he combined with others to import cocaine into the United States by way of semi-submersible vessels built by him, is clearly subject to the jurisdiction of this Court. Not only did he admit successful importations into the United States, he agreed that he would facilitate further smuggling trips into the United States by the construction of additional semi-submersible vessels.

While the statutes in question do not require an overt act committed in the United States (an agreement with others to attempt to import drugs into the United States is sufficient), Garcia-Velasquez did combine with others to commit acts within the United States – he admitted prior successful smuggling trips into the United States and an

agreement with others to facilitate future smuggling trips by constructing semi-submersible vessels for that purpose.

## **CONCLUSION**

Since law of this Circuit is contrary to that argued by Garcia-Velasquez, it is unnecessary for this Court to require a response from Respondent. Pursuant to Rule 4 on habeas corpus cases, the petition should be dismissed on the merits even if it were not time barred.

It is therefore ORDERED AND ADJUDGED that:

1. Petitioner's Motion to Vacate/Set Aside/Correct Sentence (2255) (Dkt. #1) is DISMISSED as time barred. If it were not time barred, it would have been dismissed on the merits.

2. The Clerk is directed to terminate any pending motions and close this case.

3. The Clerk is directed to terminate from pending status the motion to vacate found at Dkt. #127, in the underlying criminal case, case number 8:08-cr-24-T-30AEP.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

It is further ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find

the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida, this 15th day of November, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

F:\Docs\2013\13-cv-2854 deny 2255.docx

9